**LSK&D #: 104-7703 / 1070635**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
YEVGENTY DIKLER,

                                      Plaintiff,

               -against-

THE CITY OF NEW YORK, DETECTIVE
MICHAEL VISCONTI shield #06482,
SECURITY OFFICER WILSON VEGA, HWA
INC.,

                                Defendants.
-----------------------------------------------------------------x

**Docket No.: 07 CIV. 5984**

**Hon. Paul Crotty**

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS HWA, INC. AND WILSON VEGA'S
MOTION FOR SUMMARY JUDGMENT**

JOHN L. TARNOWSKI
On the Brief

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................1

STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 56.1 ....................1

STANDARD OF REVIEW…………………………………………………………8

ARGUMENT ...................................................................................9

    Plaintiff Cannot Establish a Malicious Prosecution Claim
    Because the Requisite Elements are not Present …………………………………..9

    Plaintiffs Cannot State A False Arrest Claim Against HWA, Inc.
    Or Wilson Vega Because The Police Alone Made The
    Decision To Arrest And Prosecute ……………………………………………… 12

    Plaintiff's Allegations are Insufficient to State a
    Claim under Section 1983 …………………………………………………………14

    This Court Should Impose Rule 11 Sanctions On Plaintiff
    Because His Refusal To Dismiss The Complaint Against
    HWA, Inc. And Wilson Vega Amounts To Frivolous Conduct …………………17

CONCLUSION..................................................................................19

Defendants HWA, Inc. and Wilson Vega, submit this Memorandum of Law and the accompanying Affidavit in support of their motion for summary judgment dismissing plaintiff's Complaint pursuant to Fed.R.Civ.P. 56. Contrary to the conclusory allegations contained in the complaint, plaintiff is legally unable to establish a cause of action against either HWA, Inc. and Wilson Vega as a matter of law.

## PRELIMINARY STATEMENT

Plaintiff's alleged causes of action do not form the basis of a claim upon which relief may be granted against defendants HWA, Inc. and Wilson Vega.

Plaintiff's first and second causes of action allege, respectively, False Arrest pursuant to 42 U.S.C. §1983 and False Arrest pursuant to New York State law.

Similarly, plaintiff's third and fourth causes of action allege, respectively, Malicious Prosecution pursuant to 42 U.S.C §1983 and Malicious Prosecution under New York State law.. (Complaint,¶¶ 28-53).

Based upon the nature of the allegations contained in plaintiff's complaint as well as the totality of the evidence adduced during discovery, there are no triable issues of material fact and plaintiff has failed to proffer any cognizable claims against defendants HWA, Inc. and Wilson Vega for which relief may be granted. Consequently, defendants HWA, Inc. and Wilson Vega submit that plaintiff's Complaint must be dismissed in its entirety.

## STATEMENT OF FACTS PURSUANT TO RULE 56.1

On March 22, 2006, plaintiff Yevgenty Dikler along with his wife Svetlana Dikler, presented at 26 Federal Plaza, New York, New York, pursuant to an appointment he had made with the Office of Immigration and Naturalization to discuss his wife's

immigration status. (Complaint,¶¶ 8-9). Like all visitors to 26 Federal Plaza, Mr. Dikler passed through the security screening checkpoint to gain entry to the building. (Complaint,¶ 10). At the time, Mr. Dikler was carrying a New York Police Department style badge in his wallet. (Complaint, ¶ 10). The badge was discovered during the screening process by Security Officer Wilson Vega who was employed by HGA, Inc. and was working as part of the security screening staff at 26 Federal Plaza. (Vega Transcript at Page 7)

After observing the badge in Mr. Dikler's wallet, and in accordance with his post instructions dictated by the Federal Police, Security Officer Vega called the Federal Police to the scene. (Vega Transcript at Page 13).  Mr. Vega then requested that plaintiff provide some form of identification; which plaintiff did. (Vega Transcript at Page 30).  Mr. Vega handed both the badge and plaintiff's identification to Officer Torres of the Federal Police Department. (Vega Transcript at Page 14). Mr. Vega's involvement with plaintiff then ended. Plaintiff then proceeded to his appointment with the Immigration and Naturalization Office. (Dikler Transcript at Page 53). It was after plaintiff's appointment when he returned to the Federal Police Office in 26 Federal Plaza that he was detained and later arrested. (Dikler Transcript at Page 54).

At no time did Mr. Vega make any determination as to whether plaintiff would be arrested or charged with any crime.  Additionally, Mr. Vega testified that his post orders required that he call the Federal Police with respect to all persons entering 26 Federal Plaza with a metal badge, whether they had supporting documentation or not. (Vega Transcript at Page 42). In fact, Mr. Vega was unaware that Mr. Dikler had been arrested until he received notification of the instant lawsuit (Vega Transcript at Page 15).

At his deposition, HWA, Inc. employee Mr. Wilson Vega specifically testified to the following protocol which he observed when screening visitors to 26 Federal Plaza:

> Q    What specifically were your instructions if someone possessed a badge at 26 Federal Plaza?
>
> A    We see it on the x-ray machine or presented it, we have to hold it, asked them if they have an I.D. to go with the shield.  Once we have the I.D., we would call the federal police, to please stand by over there. (Vega Transcript at 21).
>
> Q    Told them to wait?
>
> A    Yes, sir. (Vega Transcript at 21).
>
> Q    How long would it be that the federal police would come?
>
> A    Anywhere between five and ten minutes. (Vega Transcript at 21).
>
> Q    And typically, what would the federal police do when they got to this person? What did you see them do?
>
> A    They -- we handed the shields to them and I.D., this young or that gentleman had this on them, and they would take them.  They would say to them, "Please follow me," and they be off. (Vega Transcript at 21).
>
> Q    Okay.  And you never learned what happened after that?
>
> A    No, sir. (Vega Transcript at 22).
>
> Q    And even today, you don't know what happened to them after that?
>
> A    No, sir. (Vega Transcript at 22).

Mr. Vega also testified that he did not have any discretion with respect to reporting badges held by visitors to the Federal Police irrespective of whether the visitor had the proper identification:

> Q    Did you have any discretion at all with respect to visitors holding badges or bringing in any badges to 26 Federal? Did you have any

discretion which you would report to a police officer and which you would let go through?

A   No, ma'am. (Vega Transcript at 42).

Q   So what was your understanding whether what you would do if you saw a visitor with a badge going into 26 Federal Plaza?

A   Follow the procedures on all shields coming into the federal building. (Vega Transcript at Page 42).

Q   In terms of I.D.,, was there a particular form of I.D. you asked for after you saw a badge go through the magnetometer?

A   Normally asked the one that would go with the shield. (Vega Transcript at 50).

Q   Which would be?

A   If it's NYPD.  NYPD I.D. EMT, they would have it.  The detectives.  We ask them, namely. (Vega Transcript at 51).


Q   And in the scenario where a visitor was able to give you the NYPD card, in addition to the shield, would that person be able to go through the door area and go into the building and conduct business?

A   No, ma'am. (Vega Transcript at 51).

Q   It wasn't simply the cards, the I.D. cards, it was the shield that you had to report it to your supervisor?

A   Yes, ma'am. (Vega Transcript at  51).

Q   Having reported it to your supervisor, let's say if the person had the correct I.D. card from whatever entity that was displayed on the shield, do you know what would happen at that point?

A   The FPO would still respond to the call. (Vega Transcript at 51).

Q   Would they necessarily take that individual away to another office or just examine the I.D.?

A   They would take them away. (Vega transcript Page 51).

Mr. Vega further testified to his actions with respect to the incident with plaintiff Dikler on March 22, 2006:

> Q   Now you never told the NYPD that Mr. Dikler's was forged, correct?
>
> A   No, I never told him. (Vega Transcript at Page 28).
>
> Q   You never said this is a forged badge or non-forged badge?
>
> A   No, sir. (Vega Transcript at Page 28-29).
>
> Q   Did you ask Mr. Dikler for I.D.?
>
> A   Yes. (Vega Transcript at 30).
>
> Q   Did he show it to you?
>
> A   Yes, sir. (Vega Transcript at 30).
>
> Q   And then you called for federal security.
>
> A   Yes, sir. (Vega Transcript at 30).
>
> Q   Did you make a determination when the person presented I.D. to you, if that person who presented I.D. was actually employed by the entity represented on the I.D.?
>
> A   No, sir. (Vega Transcript at 36).
>
> Q   That wasn't part of your job.
>
> A   No, sir. (Vega Transcript at Page 36).

At plaintiff's deposition conducted on April 2, 2008, he testified consistent with the testimony of Mr. Vega.  Specifically, plaintiff testified:

> Q   What did this individual say to you?
>
> A   He ask me have I some shields in my pockets, in my jacket. (Dikler Transcript at Page 20).
>
> Q   And what did you say in response?
>
> A   Yes. (Dikler Transcript at Page 20).
>
> Q   What did he say or do after that?
>
> A   He called to federal security office in the same building. (Dikler Transcript at Page 20).

Q    Did he say anything to you before calling on the radio?

A    Wait aside. (Dikler Transcript at Page 21).

Q    Okay. How long did you wait before someone responded?

A    Very short. (Dikler Transcript at Page 22).

Q    Did someone come in response?

A    Yes. (Dikler Transcript at Page 22).

Q    And who came?

A.    White male. (Dikler Transcript at Page 23).

Q    Did this white male remove the wallet from the basket or was he handed the wallet? (Dikler Transcript at Page 24).

A    No, the wallet was on security officer, so security officer give my wallet to federal security detective. (Dikler Transcript at Page 24).

Plaintiff further testified that after his meeting, he returned to the Federal Police Office on the first floor of 26 Federal Plaza:

Q    How long was the appointment?

A    I don't remember, 30 minutes. (Dikler Transcript at Page 54).

Q    And did you return?

A    Sure. (Dikler Transcript at Page 54).

Q    Where did you go?

A    On the first floor, federal security service office. (Dikler Transcript at Page 54).

The deposition of defendant New York city Police Officer Michael Visconti was conducted on May 21, 2008. Officer Visconti testified with respect to the incident wherein plaintiff Dikler was arrested on March 2, 2006. Specifically, Officer Visconti testified that he was the person who made the decision to arrest plaintiff. He stated:

Q.    Who made the decision about the arrest charges? Was it your decision or was it someone else's?

A    Mine. (Visconti Transcript at Page 69).

Officer Visconti also testified that he did not remember ever speaking with Wilson Vega with respect to plaintiff's arrest.  Officer Visconti testified:

> Q    did you speak to Security Officer Wilson Vega regarding Mr. Dikler?
>
> A    I' don't remember. (Visconti Transcript at page 79).
>
> Q    Did he [Vega] indicate that he had recovered a forged detective style shield?
>
> A    I don't remember if I spoke to him specifically.  (Visconti Transcript at page 81).
>
> Q    did Mr. Vega ever express an opinion about whether the shield was forged?
>
> A.    Not that I know. (Visconti Transcript at page 82).

## SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact an that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   Additionally, the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Once the moving party has demonstrated that there exists no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with

'specific facts showing that there is a genuine issue for trial, '" Matsushita Elec Indus Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  The nonmovant's evidence must be "concrete evidence from which a reasonable juror could return a verdict in his favor.  Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case."  Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted)(alteration in original).   Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."   Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT STATE A CLAIM FOR FALSE ARREST AGAINST HWA, INC. OR WILSON VEGA BECAUSE THE POLICE ALONE MADE THE DECISION TO ARREST PLAINTIFF

It is well settled that claims for false arrest should be dismissed where, as here, the party against whom the claims are stated did nothing more than call the police or provide them with information and it was the police who decided to make the arrest. Specifically: the First Department restated the rule of law in New York as follows:

> It is well-settled in this State's jurisprudence that a civilian complainant, by merely seeking police assistance or

> furnishing information to law enforcement authorities who
> are then free to exercise their own judgment as to whether
> an arrest should be made and criminal charges filed, will not
> be held liable for false arrest or malicious prosecution.

Du Chateau v. Metro-North Commuter Railroad Co., 253 A.D.2d 128, 131, 688
N.Y.S.2d 12, 15 (1st Dept. 1999).

In Du Chateau, the court held that even "identifying the plaintiff as the perpetrator
of a crime, signing the summons or testifying at trial" cannot give rise to tort liability
because the decision to make the arrest, as in this case, was made solely by the police.
Id.

Similarly, in Perez v. Charter One FSB, 298 A.D.2d 447, 447-48 (2nd Dep't 2002),
the Second Department affirmed the dismissal of false arrest and false imprisonment
claims, because:

> The plaintiff failed to rebut the defendant's prima facie
> showing that it did not instigate the plaintiff's arrest, but
> merely supplied information to the police who determined
> that an arrest was appropriate.

See also Schiffren v. Kramer, 225 A.D.2d 757, 758 (2nd Dep't 1996)(providing
information to the police is "such limited involvement in a criminal prosecution [that it]
will not support claims sounding in either malicious prosecution or false arrest");
Eisenkraft v. Armstrong, 172 A.D.2d 484, 486 (2nd Dep't 1991)("defendant Armstrong
merely provided information to the police and there is nothing to indicate that she
commenced the proceeding against the plaintiff or that she instigated the arrest").

In Celnick v. Freitag, 242 A.D.2d 436, 437, 662 N.Y.S.2d 37, 39 (1st Dept. 1997),
an arrestee failed to support a cause of action for false arrest against the owner of a lost
ring for which the arrestee had sought to secure a reward. The evidence demonstrated

that the owner merely provided information to the police to recover the ring; she never commenced any action against the arrestee or instigated the arrest. The First Department held

> To sustain a cause of action for false arrest and false imprisonment, a plaintiff must show that the defendant took an active role in the prosecution of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.

242 A.D.2d at 437, 662 N.Y.S.2d at 39.

The First Department has consistently followed this standard. Brown v. Sears Roebuck and Co., 297 A.D.2d 205, 209, 746 N.Y.S.2d 141, 146 (1st Dept. 2002) (plaintiff failed to state malicious prosecution claim against former employer; "there was no evidence that [former employer] did anything other than provide police with information and sign the criminal complaint at request of police"); see also Morel v. Crimaldi, 256 A.D.2d 188, 189, 683 N.Y.S.2d 22, 24 (1st Dept. 1998) (truthful response to a police inquiry did not support false arrest or malicious prosecution claims; "[p]roviding truthful information to the police is certainly no ground for damages for false arrest or malicious prosecution.").

In the instant case, it is undisputed that plaintiff was screened as part of the routine protocol necessary for all visitors to enter 26 Federal Plaza. As part of the screening process, Mr. Wilson Vega while working in his capacity for HWA, Inc. observed a New York Police Department styled shield in plaintiff's wallet.  Pursuant to his post instructions, Mr. Vega requested that plaintiff provide him with the badge and then he notified the Federal Police on site about the badge. At no time did Mr. Vega place plaintiff in any sort of custody, nor did he prevent plaintiff from attending his

meeting with the Immigration and Naturalization Service.  In fact, plaintiff attended the meeting which lasted approximately thirty minutes; and it was not until after the meeting when plaintiff met with the federal police that he was detained and later arrested. (Dikler Transcript at Page 54).

It is clear from Mr. Vega's testimony that he was simply following his post instructions in notifying the Federal Police regarding plaintiff's badge and that there was no nefarious motive in Mr. Vega's treatment of plaintiff.

Additionally, New York City Police Officer Michael Visconti testified that the eventual decision to arrest plaintiff was made by the New York City Police Department alone. (Visconti Transcript at Page 69). In fact, Officer Visconti testified that he doesn't even remember if he spoke to Wilson Vega. (Visconti Transcript at Page 80). The most that can said about Mr. Vega's actions is that he followed the procedures of his employment by calling the Federal Police.

Accordingly, because Mr. Vega did nothing more than call the Federal Police and because the decision to arrest and prosecute was made solely by the New York City Police Department, plaintiff's claims for false Arrest against HWA, Inc. and Wilson Vega under New York State law and 42 U.S.C. §1983 should be dismissed as a matter of law.

## POINT II

### PLAINTIFF CANNOT ESTABLISH A MALICIOUS PROSECUTION CLAIM BECAUSE TH E REQUISITE ELEMENTS ARE NOT PRESENT

Under both New York State law and 42 U.S.C. §1983, a  false arrest and a malicious prosecution claim require a showing of the (1) initiation of a criminal proceeding; (2) its termination favorably to the plaintiff; (3) lack of probable cause; and (4) malice (Du Chateau v. Metro-North R.R. Co., 253 A.D.2d 128, supra).  The mere

reporting of a crime or giving testimony is insufficient to constitute "initiation of a proceeding" (DeFilippo v. County of Nassau, 183 A.D.2d 695, supra). A plaintiff must show that the defendant directed an officer to put him or her into custody (Du Chateau v. Metro-North R.R. Co., supra).

The clear and undisputed evidence as adduced during the depositions of plaintiff Yevgenty Dikler and defendants detective Michael Visconti and Wilson Vega demonstrates HWA, Inc. and Wilson Vega did not initiate a criminal proceeding against the plaintiff. Thus, the plaintiff cannot satisfy the first element of a malicious prosecution claim. To the contrary, Officer Vega acted in accordance with his post instructions and merely advised the Federal Police that a visitor to 26 Federal Plaza was in possession of a badge similar in shape to a New York Police Department badge. Officer Vega did not ask that the plaintiff be taken into custody or otherwise cause him to be arrested.

Secondly, it is the plaintiff's burden to establish that the criminal action terminated favorably to him (Reinhart v. Jakubowski, 239 A.D.2d 765 [3[rd] Dept. 1997]). No evidence exists to support a finding that a criminal proceeding arising out of the alleged incident terminated in plaintiff's favor. The case law sets forth that the final disposition of the criminal proceeding must involve the merits and indicate the accused's innocence (Id.). A dismissal "in the interest of justice" is not such an adjudication and will not substantiate a malicious prosecution claim (Cobb v. Willis, 208 A.D.2d 1155 [3[rd] Dept. 1994]). Disposal of a criminal charge by an adjournment in contemplation of dismissal bars recovery for malicious prosecution as it is not a determination of guilt or innocence. (Nadeau v. La Pointe, 707 N.Y.S.2d 704 [3[rd] Dept. 2000]).

In the case at bar, the plaintiff was allegedly charged with a violation of Penal Law Section 170.25.   The plaintiff testified that those charges were dismissed, but cannot offer any proof that a determination of guilt or innocence was determined by way of a hearing on the merits.   Accordingly, the facts do not establish that criminal charges were terminated in the plaintiff's favor to permit plaintiff to pursue a claim of malicious prosecution.

The plaintiff also fails to meet his burden of proving a lack of probable cause for the crimes charged.   The plaintiff was charged with a violation of Penal Law § 170.25, "Criminal Possession of a Forged Instrument in the Second Degree."   Based upon plaintiff's own account, he purchased what he thought was a souvenir badge from a vendor at the MTA depot where he worked.   Plaintiff admitted that the badge was not given to him by the MTA. He also acknowledged that the MTA subsequently prohibited its employees from carrying such badges. As a consequence, the subject badge at issue did turn out to be an illegal copy of a law enforcement style badge. Consequently. Plaintiff cannot show that there was a lack of probable cause for his arrest.

Moreover, plaintiff cannot establish the presence of malice as the impetus for the arrest.   To do so, the plaintiff would have to show a wrong or improper motive for the conduct by HWA and Wilson Vega. (Du Chateau v. Metro-North R.R. Co., 253 A.D.2d 128, supra). As Mr. Vega was merely carrying out his post instructions when he notified the Federal Police of Mr. Dikler's badge, plaintiff cannot demonstrate that he acted in a vindictive or spiteful manner necessary to demonstrate he was acting with malice toward Mr. Dikler. The impetus for calling the Federal Police was for them to perform a routine investigation of the badge, as was done with all other badges that pass through

the screening checkpoint.    Consequently, there are no facts from which it can be inferred that Mr/ Vega had an improper motive for calling the Federal Police. He testified that upon the detection **all** badges, the Federal Police must be notified. Based upon the foregoing, there is simply no evidence to indicate that  Mr. Vega acted with malice.  As such this claim must be dismissed.

### POINT III

### PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM UNDER SECTION 1983

In order to support a claim under 42 U.S.C. §1983, plaintiff must demonstrate:

(a)    That the conduct was attributable to a person acting under color of state law; and

(b)    That such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.

Dwares v. City of New York, 985 F.2d 94, 98 (2nd Cir. 1993).  The requirement of state action excludes private conduct from the ambit of §1983, "however discriminatory or wrongful."  American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 119 S.Ct. 977, 985 (1999).

In the instant case, the undisputed facts are completely devoid of any action on the part of defendants HWA, Inc. and Wilson Vega necessary to support a violation of section 1983.  It is well settled that specific allegations are necessary to advance a §1983 cause of action, and that "[m]ere conclusory allegations do not provide an adequate basis for the assertion of a claim for violation of [section 1983].  Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck, 463 F.2d 620, 623 (2nd Cir. 1972) cert. Denied, 410 U.S. 944, 93 S.Ct. 1393 (1973).  A complaint in an action under §1983 must "contain some specific allegations of fact indicating a deprivation of

civil rights, rather than state simple conclusions." <u>Koch v. Yunich</u>, 533 F.2d 80, 85 (2nd Cir. 1976). "[A]llegations which are nothing more than broad, simple, and conclusory statements" do not state a claim under §1983. <u>Alfaro Motors v. Ward</u>, 814 F.2d 883, 887 (2nd Cir. 1987).

It is noted that "a private individual may be subject to §1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right." *See* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598 (1970); <u>Dwares v. The City of New York</u>, 985 F.2d 94 (2nd Cir. 1993); <u>Alexanian v. New York State Urban Dev. Corp.</u>, 554 F.2d 15 (2nd Cir. 1977). However, in instances such as addressed in the above actions it is incumbent upon a plaintiff to allege more than conclusory or unsupported allegations in the complaint. Rather, it is mandatory that the complaint show agreement and concerted action. <u>Doe v. Smith</u>, 704 F.Supp. 1177 (S.D.N.Y. 1988).

In the present matter, it is clear that there was no action taken by Officer Vega that deprived the plaintiff of a federal right, privilege or immunity secured by the Constitution or laws of the United States. In following his post instructions which were dictated by the Federal Police, Officer Vega was simply following protocol when he observed the badge which was concealed in plaintiff's wallet. Once Officer Vega observed the badge, he acted in accordance with his orders by immediately contacting the Federal Police. At no time, did Officer Vega, detain, arrest or otherwise deprive plaintiff of any of his constitutional rights. As part of plaintiff's alleged causes of action for False Arrest and Malicious Prosecution, the complaint does not make any allegations against defendants HWA, Inc. and Wilson Vega other then that defendant

Wilson Vega questioned plaintiff about a badge that was found in his wallet. **Notably, the evidence in this case is devoid of any factual basis that defendants HWA, Inc. and Wilson Vega did anything to arrest him, prosecute him or to deprive him of his constitutional rights.** Rather, the deposition testimony of plaintiff himself demonstrates that neither HWA, Inc. and Wilson Vega had anything to do with the decision to arrest plaintiff. Based upon the foregoing, plaintiff has failed to articulate a valid cause of action defendants HWA, Inc. and Wilson Vega for either False Arrest and Malicious Prosecution under 42 U.S.C. §1983.

## POINT IV

### THIS COURT SHOULD IMPOSE RULE 11 SANCTIONS ON PLAINTIFF BECAUSE HIS REFUSAL TO DISMISS THE COMPLAINT AGAINST HWA, INC. AND WILSON VEGA AMOUNTS TO FRIVOLOUS CONDUCT

The United States Court of Appeals for the Second Circuit has explained that sanctions under Fed. R. Civ. P. 11 are appropriate where, as here, a party pursues a claim which, existing precedent establishes, has no chance of success.

In <u>Corroon v. Reeve</u>, 285 F.3d 86, 92 (2nd Cir,. 2001, the Second Circuit stated the rule as follows:

> *Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify or reverse the law as it stands.*

The Second Circuit also held:

> *[S]anctions may be imposed on a person who signs a pleading, motion or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.*

<u>Caise Nationale Credit Agricole-CNCA v. Valcorp., Inc.</u>, 28 F.3d 259, 264 (2nd Cir. 1994) <u>See</u> <u>also</u> <u>Resqnet.com, Inc. v. Lansa, Inc.</u>, 382 F. Supp.2d 424, 452-53 (S.D.N.Y. 2005) ("A violation of Rule 11 is thus triggered 'when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact or law or a good faith argument for the extension, modification or reversal of existing law'").

In the instant case, from the March 22, 2006 to the present, plaintiff has had no good-faith basis for including HWA, Inc. and Wilson Vega within the instant lawsuit. Plaintiff and his attorney were acutely aware that Mr. Vega had nothing to do with the decision to arrest him and it is abundantly clear that neither Mr. Vega nor his employer HWA, Inc., a private security company, had any impetus as to whether to move forward with plaintiff's prosecution.

Additionally, plaintiff is also aware that the badge for which he was arrested was not a badge sanctioned by his employer the MTA, but was rather a souveigneir purchased from a private dealer. Subsequent to plaintiff's arrest, the MTA advised its employees to stop carrying non-official badges such as plaintiff's.

If it was not clear enough to plaintiff and his counsel that this was a meritless action prior to discovery, the deposition testimony of plaintiff, himself, as well as the testimony of New York City Police Officer Michael Visconti clearly demonstrate that all Wilson Vega did was follow protocol in identifying a badge being carried by a visitor to 26 Federal Plaza to the Federal police. There was no choice or selectivity on the part of Mr. Vega in directing plaintiff to speak with the Federal Police.  As noted in the instant brief, plaintiff has failed to satisfy **any** of the necessary elements to proffer a cause of

action sounding in False Arrest or Malicious Prosecution against HWA, Inc. or its employee Wilson Vega.

To wit, prior to the filing of this motion plaintiff was given the option of discontinuing this action in exchange for a nominal settlement; a choice plaintiff refused. As plaintiff has failed to demonstrate the necessary good faith to maintain this action, your affirmant respectfully requests that the instant motion be granted in its entirety and that the Court award defendants HWA, Inc. and Wilson Vega the costs associated with this motion and that the Court impose a just sanction upon plaintiff's counsel for unnecessarily maintaining this frivolous lawsuit.

## CONCLUSION

Wherefore, defendants HWA, Inc. and Wilson Vega request that the Court grant the instant motion for summary judgment dismiss plaintiff's Complaint in its entirety along with any cross-claims and impose the appropriate sanctions upon plaintiff's counsel together with any other relief the Court deems just and fair.

Respectfully submitted,

LESTER SCHWAB KATZ & DWYER, LLP


_____
John Tarnowski (JT-1138)
Attorneys for Defendants
WILSON VEGA and HWA INC.
120 Broadway
New York, New York  10271
(212)  964-6611

TO:

DAVID A. ZELMAN, ESQ.
612 Eastern Parkway
Brooklyn, New York  11225
Attorneys for Plaintiff

JOYCE CAMPBELL PRIVETERRE, ESQ.
Assistant Corporation Counsel of
THE CITY OF NEW YORK 100 Church Street
Room 3-148
New York, New York 10007
(212) 788-1277

<u>Declaration of Service</u>

I served the annexed NOTICE OF MOTION, AFFIRMATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS HWA, INC. AND WILSON VEGA'S MOTION FOR SUMMARY JUDGMENT by first-class mail on the following persons on August 28, 2008:

> DAVID A. ZELMAN, ESQ.
> 612 Eastern Parkway
> Brooklyn, New York  11225
> Attorneys for Plaintiff
>
> JOYCE CAMPBELL PRIVETERRE, ESQ.
> Assistant Corporation Counsel of
> THE CITY OF NEW YORK 100 Church Street
> Room 3-148
> New York, New York 10007
> (212) 788-1277

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 28, 2008.


_____
MARY E. MAGEE